**AFFIRM; and Opinion Filed April 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00465-CV

**DOUGLAS SPICER, Appellant**
**V.**
**TEXAS WORKFORCE COMMISSION AND PLEASANT VALLEY
UNITED METHODIST CHURCH, Appellees**

**On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-12-09281**

## OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

This is an appeal from the trial court's summary judgment affirming the Texas Workforce Commission's (TWC) decision to deny Douglas Spicer unemployment benefits. In his first issue, Spicer contends "it might well be" a violation of federal law for the TWC and the trial court to fail to acknowledge his claim that section 201.066 of the Texas Unemployment Compensation Act (the TUCA)[1] is unconstitutional. In his second and third issues, Spicer asserts that section 201.066 of the TUCA, which, as relevant to this appeal, exempts service in the employ of a church from the statutory definition of employment, violates the First and Fourteenth Amendments of the United States Constitution. We affirm the trial court's judgment.

---

[1] *See* TEX. LAB. CODE ANN. §§ 201.001–215.044 (West 2006 & Supp. 2013).

## Background

Douglas Spicer was a pianist and organist for the Pleasant Valley United Methodist Church (Pleasant Valley). After Spicer's employment was terminated, he filed a claim for unemployment benefits. Spicer's claim was denied because he did not have sufficient benefit wage credits under section 207.021(a)(5) of the TUCA.[2] Spicer appealed the finding to the TWC Appeal Tribunal.

The Appeal Tribunal framed the issue as whether Spicer earned sufficient base period wages to establish a claim for unemployment benefits. The Appeal Tribunal found that Spicer's base period began on October 1, 2010 and extended through September 30, 2011 and that, during his base period, Spicer earned wages only from Pleasant Valley. The Appeal Tribunal concluded that, pursuant to section 207.021(a)(5), Spicer was entitled to unemployment benefits only if he had sufficient credits. Because section 201.066 of the TUCA provides that employment does not include service in the employ of a church, the wages Spicer earned from Pleasant Valley were exempt, and he was not considered to be in employment as defined by the TUCA.

The Appeal Tribunal affirmed the denial of Spicer's claim. Spicer appealed to the TWC. The TWC determined the case was properly decided by the Appeal Tribunal and adopted the Appeal Tribunal's findings of fact and conclusions of law.

Spicer filed a petition in the trial court seeking review of the TWC's decision. The TWC filed a motion for summary judgment on the ground there was more than a scintilla of evidence to support the TWC's determination that Spicer was not entitled to receive benefits. The TWC's summary judgment evidence consisted of its decision, the decision of the Appeals Tribunal, and

---

[2] Effective May 18, 2013, the Legislature enacted a new section 207.021(a)(5) and redesignated the former section 207.021(a)(5) as section 207.021(a)(6). *See* Act of May 2, 2013, 83d Leg., R.S., ch. 107, § 1(a), 2013 Tex. Gen. Laws 222, 223. Because there was no substantive change to the provision and to maintain consistency with the proceedings before the TWC and the trial court, we will refer to the relevant provision as section 207.021(a)(5).

Spicer's admissions that the only wages he received between October 1, 2010 and September 30, 2011 were from Pleasant Valley and that Pleasant Valley was a church.

Spicer did not rely on any evidence to contest the TWC's right to summary judgment and did not dispute the applicable facts. Rather, he asserted that section 201.066 of the TUCA was unconstitutional. The trial court granted the TWC's motion for summary judgment.[3]

**Standard of Review**

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). When reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id.*

Judicial review of a TWC decision regarding benefit payments is by trial de novo in which the trial court determines whether substantial evidence supports the TWC's ruling. *See* TEX. LAB. CODE ANN. § 212.202(a) (West 2006); *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998) (citing *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986)). The TWC's action is presumed valid, and the party seeking to set aside the decision has the burden of showing that it was not supported by substantial evidence. *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Murray v. Tex. Workforce Comm'n*, 337 S.W.3d 522, 524 (Tex. App.—Dallas

---

[3] Pleasant Valley did not appear in the case and did not move for summary judgment. However, Spicer's only allegation was that the TWC's decision was erroneous. Therefore, the trial court's summary judgment affirming the TWC's decision disposed of the sole claim that Spicer was asserting against either the TWC or Pleasant Valley. *See Chawla v. Tex. Workforce Comm'n*, No. 03-10-00327-CV, 2012 WL 3629460, at *1 (Tex. App.—Austin Aug. 22, 2012, pet. denied) (mem. op.). We conclude the summary judgment, which stated it was "a final judgment disposing of all claims," was a final, appealable order. *See id.*

2011, no pet.). Because substantial evidence is more than a mere scintilla but less than a preponderance of the evidence, the evidence in the record may preponderate against the TWC's decision but still amount to substantial evidence. *State v. Pub. Util. Comm'n*, 883 S.W.2d 190, 204 (Tex. 1994); *Blanchard v. Brazos Forest Prod., L.P.*, 353 S.W.3d 569, 572 (Tex. App.—Fort Worth 2011, pet. denied).

Under the substantial evidence standard of review, the issue is whether the evidence introduced before the trial court shows facts in existence at the time of the TWC's decision that reasonably support the decision. *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708. The reviewing court may not set aside the TWC's decision merely because it would reach a different conclusion. *Id.* Rather, the TWC's decision may be set aside only if the trial court finds it was made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious. *Id.*

A trial court may grant summary judgment in cases tried under the substantial evidence rule because the only issue before the court is a question of law. *Blanchard*, 353 S.W.3d at 573; *see also Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) (whether there is substantial evidence to support administrative decision is question of law). We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law. *Potts v. Tex. Emp't Comm'n*, 884 S.W.2d 879, 882 (Tex. App.—Dallas 1994, no writ); *Blanchard*, 353 S.W.3d at 573. We determine whether the summary judgment evidence established as a matter of law that substantial evidence existed to support the TWC decision. *Potts*, 884 S.W.2d at 883; *Blanchard*, 353 S.W.3d at 573.

**Analysis**

Spicer argues that section 201.066 of the TUCA violates (1) the Establishment Clause of the First Amendment and (2) the Equal Protection Clause of the Fourteenth Amendment by

preventing him from freely exercising his religious beliefs.[4]  We must construe the statute, if such a construction is fairly possible, to avoid raising doubts of its constitutionality.  *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780 (1981); *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003).  As the party challenging the statute, Spicer had the burden of demonstrating its unconstitutionality.  *Walker*, 111 S.W.3d at 66; *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974).  This burden did not change even though Spicer was the nonmovant to the motion for summary judgment.  *See Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 869 S.W.2d 367, 369–70 (Tex. App.—Dallas 1993) (party opposing motion for summary judgment on ground statute violated provisions of Texas constitution had burden to demonstrate statute was unconstitutional), *aff'd*, 889 S.W.2d 259 (Tex. 1994).

In challenging the constitutionality of a statute, a party must show the statute is unconstitutional on its face or as applied.  *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995).  Spicer contends the exemption of service in the employ of a church from the definition of employment in the TUCA violates the First and Fourteenth Amendments.  He, therefore, asserts the statute is unconstitutional on its face.  *See In re Commitment of Fisher*, 164 S.W.3d 637, 655 (Tex. 2005) (to prevail on claim statute is unconstitutional on its face, party "bears the heavy burden" of showing statute is "unconstitutional in all of its applications"); *8100 N. Freeway, Ltd. v. City of Houston*, 363 S.W.3d 849, 855 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  Because Spicer asserts facial challenges to the statute, he must show section 201.066 is unconstitutional under all circumstances.  *See Appraisal Review Bd. v. Tex-Air Helicopters, Inc.*, 970 S.W.2d 530, 534 (Tex. 1998); *see also United States v. Stevens*, 559 U.S. 460, 472 (2010).

---

[4] In relevant part, section 201.066 provides that the term "employment" in the TUCA does not include service in the employ of a church. TEX. LAB. CODE ANN. § 201.066(1)(A) (West 2006).

*Statutory Scheme*

In 1935, in response to widespread unemployment associated with the Great Depression, Congress established a cooperative Federal-State program to provide benefits to unemployed workers. *See St. Martin Evangelical Lutheran Church*, 451 U.S. at 775. The program, now set out in the Federal Unemployment Tax Act, 26 U.S.C.A. §§ 3301–3311 (West 2011 & Supp. 2013) (the FUTA), imposes a federal excise tax on all employers, except those specifically exempted by Congress. *California v. Grace Brethren Church*, 457 U.S. 393, 396–97 (1982). Congress further provided that employers could avoid a significant portion of the Federal excise tax by payment into federally-approved State unemployment programs where those were available. *Id.* at 397.[5]

In 1936, the Texas Legislature established the Texas unemployment compensation system. *See* Act of Oct. 26, 1936, 44th Leg., 3d C.S., ch. 482, 1936 Tex. Gen. Laws 1993, 1993. The stated purpose of the legislation was "to provide an orderly system of contributions for the care of the justifiably unemployed during times of economic difficulty, thereby preserving and establishing self-respect, reliance, and good citizenship." *Id.* at 1994. Underlying this objective was the recognition that it was not economically sound for the State "to pay large sums of money for direct relief and to support other emergency programs which might have been avoided by the payment of small orderly contributions during periods of economic well-being, had a definite program of Unemployment Compensation been in force." *Id.* at 1993.

The current State unemployment compensation system is set out in the TUCA. Under the TUCA, "employers" make "contributions" to the "compensation fund." TEX. LAB. CODE ANN.

_____

[5] The United States Secretary of Labor approves State laws that conform to the requirements of the FUTA, and certifies on a yearly basis that such laws remain in conformance. 26 U.S.C.A. § 3304(c) (West Supp. 2013). To retain Federal approval, State programs must "'cover' certain broad categories of employment," as provided in 26 U.S.C. §§ 3304 and 3309, *Grace Brethren Church*, 457 U.S. at 397 & n.5, although States are "free to expand [their] coverage beyond the federal minimum without jeopardizing [their] federal certification." *St. Martin Evangelical Lutheran Church*, 451 U.S. at 775 n.3. The FUTA has been amended several times since 1935, and "[i]n response to each federal amendment, the States correspondingly have amended their statutes to retain their federal certifications." *Id.* at 775 n.4. All fifty States have enacted unemployment compensation laws providing at least the minimum coverage mandated by the FUTA. *Id.* at 775 n.3.

§ 201.011(9), (10); 201.021; 201.021; 204.002 (West 2006). These "contributions" are excise taxes, and the TUCA is a "taxing statute." *Id.* § 201.011(10); *State v. Praetorians*, 143 Tex. 565, 570, 186 S.W.2d 973, 976 (1945). Eligible individuals who are unemployed through no fault of their own may receive unemployment benefits from the compensation fund. *Collingsworth Gen. Hosp.*, 988 S.W.2d at 709.

As relevant to this case, an individual is eligible for unemployment benefits if he is totally unemployed in a "benefit period." TEX. LAB. CODE ANN. § 207.002(a) (West Supp. 2013). The individual must also meet a number of statutory criteria, including that he is able to show "benefit wage credits" for his "base period." *Id.* § 207.021(a)(6) (West Supp. 2013). "Benefit wage credits" are "wages the individual received for employment from an employer during the individual's base period." *Id.* § 207.004(a)(1) (West Supp. 2013). As relevant in this case, the individual's "base period" is "the four consecutive completed calendar quarters, prescribed by the commission, in the five consecutive completed calendar quarters preceding the first day of an individual's benefit year." *Id.* § 201.011(1)(A).

"Employment" includes a service performed by the individual for wages. *Id.* § 201.041 (West 2006). There are, however, a number of statutory exemptions from the term. *Id.* §§ 201.061–.078 (West 2006 & Supp. 2013).[6] The exemption relevant to this appeal is that employment "does not include service in the employ of a church." *Id.* § 201.066(1)(A).[7]

---

[6] "Employment" for purposes of the TUCA does not include (1) service eligible under an Act of Congress (§ 201.061); (2) service under an arrangement with an agency (§ 201.062); (3) certain government service (§ 201.063); (4) domestic service (§ 201.064); (5) service by a relative (§ 201.065); (6) religious service (§ 201.066); (7) rehabilitative service (§ 201.067); (7) certain service in a hospital (§ 201.068); (8) service of a student (§ 201.069); (9) service as a product demonstrator or salesman (§ 201.070); (10) service as an insurance agent if paid by commission (§ 201.071); (11) certain service as a real estate broker (§ 201.072); (12) certain delivery service (§ 201.073); (13) service by an inmate (§ 201.074); (14) certain service on a fishing vessel (§ 201.075); (15) certain services excluded in a pay period (§ 201.076); (16) service by a landman (§ 201.077); and (17) service by a nonresident alien agricultural worker (§ 201.078).

[7] The FUTA contains an identical exemption from the definition of "employment." *See* 26 U.S.C.A. § 3309(b)(1)(A) (West 2011). Service in the employ of a church or a religious organization has been exempted from the Texas unemployment compensation system since it was established in 1936. *See* Act of Oct. 26, 1936, 44th Leg., 3d C.S., ch. 482, 1936 Tex. Gen. Laws 1993, 2018.

Therefore, an individual employed only by a church does not earn "benefit wage credits" during his "base period" and is ineligible to receive unemployment benefits.

*Establishment Clause*

In his second issue, Spicer argues that exempting service in the employ of a church from the unemployment compensation system violates the Establishment Clause. The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The Establishment Clause applies to the states through the Fourteenth Amendment. *Wallace v. Jaffree*, 472 U.S. 38, 42 n.10 (1985).

The United States Supreme Court's Establishment Clause jurisprudence points "in two directions." *Van Orden v. Perry*, 545 U.S. 677, 683 (2005). "One face looks toward the strong role played by religion and religious traditions throughout our Nation's history." *Id.*[8] "The other face looks toward the principle that governmental intervention in religious matters can itself endanger religious freedom." *Id.* Reconciling these two "faces" requires that we "neither abdicate our responsibility to maintain a division between church and state nor evince a hostility to religion by disabling the government from in some ways recognizing our religious heritage[.]" *Id.* at 683–84. This reconciliation is manifested in the rule that the government may neither promote religion nor harbor "an official purpose to disapprove of a particular religion or of religion in general." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993); *see also Everson v. Bd. of Educ.*, 330 U.S. 1, 15 (1947). The rule cannot be drawn with an "absolutely straight line" because "rigidity could well defeat" its basic purpose, "which is to

---

[8] In *Van Orden*, the Supreme Court, quoting *School District of Abington Township v. Schempp*, 374 U.S. 203 (1963), observed:

It is true that religion has been closely identified with our history and government . . . . The fact that the Founding Fathers believed devotedly that there was a God and that the unalienable rights of man were rooted in Him is clearly evidenced in their writings, from the Mayflower Compact to the Constitution itself . . . . It can be truly said, therefore, that today, as in the beginning, our national life reflects a religious people who, in the words of Madison, are "earnestly praying, as . . . in duty bound, that the Supreme Lawgiver of the Universe . . . guide them into every measure which may be worthy of his [blessing . . . .]"

*Van Orden*, 545 U.S. at 683 (quoting *Schempp*, 374 U.S. at 212–13).

–8–

insure that no religion be sponsored or favored, none commanded, and none inhibited." *Walz v. Tax Comm'n of the City of New York*, 397 U.S. 664, 669 (1970).

When, as in this case, a law "afford[s] a uniform benefit to *all* religions," rather than "drawing distinctions on religious grounds," a court should evaluate whether the law violates the Establishment Clause under the three-part test in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 339 (1987) (quoting *Larson v. Valente*, 456 U.S. 228, 260 (1982)).[9] Under this test, a facially neutral law (1) must have a secular legislative purpose, (2) must have a principal or primary effect that neither advances nor inhibits religion, and (3) must not foster "an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612–13.

Justice O'Connor's concurring opinion in *Lynch v. Donnelly*, 465 U.S. 668, 687–94 (1984) (O'Connor, J., concurring), sought to clarify the purpose and effect prongs of the *Lemon* test. Justice O'Connor's "endorsement test" holds that the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that religion or a particular religious belief is favored or preferred. *Id.* at 688–92; *see also HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 647 (Tex. 2007) (plurality op) (noting that "from our vantage point, the [Supreme] Court seems over time to have become 'particularly attuned to whether the challenged government practice purposefully or effectively "endorses" religion, an inquiry courts generally consider a component of the *Lemon* test's first and second parts.'"). Accordingly, we will apply the *Lemon* test with a view toward whether the statute purposefully or effectively endorses religion.

---

[9] It is not clear how large a role the *Lemon* test currently plays in the larger scheme of Establishment Clause jurisprudence. *See Van Orden*, 545 U.S. at 685; *see also Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 132 S. Ct. 12, 14–15 (2011) (Thomas, J., dissenting from denial of certiorari). However, after acknowledging the criticism of the *Lemon* test, the Texas Supreme Court has noted it was "not at liberty to take criticism for rejection." *HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 647 & n.77 (Tex. 2007) (plurality op.).

Spicer first argues the tax exemption for churches in section 201.066 does not meet the first prong of the *Lemon* test because it does not have a secular purpose. "*Lemon*'s 'purpose' requirement aims at preventing the relevant governmental decisionmaker . . . from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters." *Amos*, 483 U.S. at 335. It does not require a law's purpose be unrelated to religion or "that the government show a callous indifference to religious groups." *Id.* (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)). Courts are "normally deferential to a State's articulation of a secular purpose." *Edwards v. Aguillard*, 482 U.S. 578, 586–87 (1987). Nevertheless, we review the statute to ensure that the alleged secular purpose is the actual purpose. *Wallace*, 472 U.S. at 56. In other words, the purpose must be genuine; a law will not pass constitutional muster if the secular purpose articulated by the legislature is a "sham" or "merely secondary to a religious objective." *McCreary Cnty. v. ACLU*, 545 U.S. 844, 864 (2005).

The statute need not have exclusively secular objectives to meet the "secular purpose" standard; the touchstone is neutrality, and it is only "[w]hen the government acts with the ostensible and predominant purpose of advancing religion [that] it violates" the first prong of the *Lemon* test. *Id.* at 860. Importantly, "the eyes that look to purpose belong to an 'objective observer,'" taking into account the "traditional external signs" of purpose apparent from the statute's text, legislative history, and implementation. *Id.* at 862. In sum, the government's action is unconstitutional only if "openly available data support[s] a commonsense conclusion that a religious objective permeated the government's action." *Id.* at 863.

In this case, the Texas Legislature stated the purpose of establishing the unemployment compensation system was to provide for the support of individuals who were unemployed through no fault of their own. The purpose for the exemption of service in the employ of a church from the definition of employment in the FUTA, which is identical to the exemption in

the TUCA, was to address a concern that coverage of workers whose employment patterns are irregular or whose wages are not easily accountable would adversely affect administration of the program. *See Rojas v. Fitch*, 127 F.3d 184, 188 (1st Cir. 1997). These purposes are secular in nature.

The tax exemption in this case is analogous to that upheld by the Supreme Court in *Walz*. In *Walz*, the New York City Tax Commission exempted from state taxes "real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit." *Walz*, 397 U.S. at 666–67. A property owner sought an injunction to prevent the Tax Commission "from granting property tax exemptions to religious organizations for religious properties used solely for religious worship." *Id.* at 666. The Supreme Court found the tax exemption did not violate the Establishment Clause because "[t]here is no genuine nexus between tax exemption and establishment of religion" and "[t]he grant of a tax exemption [to religious organizations] is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state." *Id.* at 675. Further, the taxing authority had "not singled out one particular church or religious group or even churches as such; rather it ha[d] granted exemption to all houses of religious worship within a broad class of property owned by nonprofit, quasi-public corporations." *Id.* at 672–73. Because the "legislative purpose of a property tax exemption is neither the advancement nor the inhibition of religion," it constituted neither sponsorship nor hostility. *Id.* at 672.

Spicer argues that *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1 (1989) (plurality op.), rather than *Walz*, should apply in this case. In *Texas Monthly*, the statute at issue exempted from the state sales tax "[p]eriodicals that are published or distributed by a religious faith and that consist

–11–

wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith." *Id.* at 5. The justices in the plurality opinion and those concurring in the judgment agreed that the statute violated the Establishment Clause. In distinguishing the sales tax exemption from the property tax exemption in *Walz*, the plurality noted the exemption in *Walz* was determined to be constitutional because it "applied to religious properties no less than to real estate owned by a wide array of nonprofit organizations, despite the sizeable tax savings it accorded religious groups." *Id.* at 11. The tax exemption at issue in *Texas Monthly*, however, provided a benefit to religious publications only, without a corresponding showing that the exemption was necessary to alleviate a significant burden on the free exercise of religion:

> Every tax exemption constitutes a subsidy that affects nonqualifying taxpayers, forcing them to become "indirect and vicarious 'donors.'" Insofar as that subsidy is conferred upon a wide array of nonsectarian groups as well as religious organizations in pursuit of some legitimate secular end, the fact that religious groups benefit incidentally does not deprive the subsidy of the secular purpose and primary effect mandated by the Establishment Clause. However, when government directs a subsidy exclusively to religious organizations that is not required by the Free Exercise Clause and that either burdens nonbeneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion, as Texas has done, it "provides unjustifiable awards of assistance to religious organizations" and cannot but "convey a message of endorsement" to slighted members of the community.

*Id.* at 14–15 (citations omitted).

Unlike the exemption in *Texas Monthly*, the exemption at issue in this case does not apply solely to an action that allows a church to promulgate its faith. Rather, a number of types of work are excluded from employment under the TUCA, reflecting the Legislature's decision that the entities for whom that work is performed should not be subject to the burden of paying the tax required by the unemployment compensation system. *See* TEX. LAB. CODE ANN. §§ 201.061–.078. The breadth of the exemptions demonstrates the exemption in section 201.066 for service in the employ of a church was not "aimed at establishing, sponsoring, or supporting

–12–

religion." *See Walz*, 397 U.S. at 674; *see also Christian Jew Found. v. State*, 653 S.W.2d 607, 614 (Tex. App.—Austin 1983, no writ) (assuming, in appeal from determination that appellant was not "church" under predecessor statute of TUCA, that statute had "general secular purpose" and "neutral effect" because "in addition to 'churches' and other religious organizations, statute excludes from mandatory contributions *other* specific categories of employers of a special character, negating any implication that the Legislature has attempted to single out religious organizations for special favor"). Viewed through the eyes of an objective viewer, neither the TUCA as a whole nor the exemption in section 201.066 demonstrates sponsorship of or hostility toward religion. *See McCreary Cnty.*, 545 U.S. at 864; *Walz*, 397 U.S. at 674. We conclude the Legislature's decision to exempt services performed in the employ of a church from the definition of employment in the TUCA does not violate the first prong of the *Lemon* test. *See St. Martin Evangelical Lutheran Church*, 451 U.S. at 783–84 (concluding church-related school was a "church" pursuant to definition in South Dakota's unemployment compensation statute and therefore exempt from payment of unemployment tax, and declining to reach school's claim that failure to designate it as a church violated its rights under the First Amendment); *see also Christian Jew Found.*, 653 S.W.2d at 614.

Under *Lemon*'s second prong, a statute will be held unconstitutional if its principal or primary effect advances or inhibits religion. "For a law to have forbidden 'effects' under *Lemon,* it must be fair to say that the *government itself* has advanced religion through its own activities and influence," not simply that the law puts religious organizations in a position where they are now better able to advance their own purposes. *Amos,* 483 U.S. at 336–37 (finding that, although religious employers were better able to promote their religion if they could discriminate based on religion with respect to their employees, the religious exemption to Title VII's prohibition against religious discrimination in employment neither advanced nor inhibited

religion as a result of the activities or influence of the government itself). Additionally, "a statute primarily having a secular effect does not violate the Establishment Clause merely because it 'happens to coincide or harmonize with the tenets of some or all religions.'" *Hernandez v. C.I.R.*, 490 U.S. 680, 696 (1989) (quoting *McGowan v. Maryland,* 366 U.S. 420, 442 (1961)).

Spicer contends the exemption in section 201.066 advances all religions and, therefore, violates the Establishment Clause. The primary purpose of the TUCA is to provide benefits to eligible individuals who are unemployed through no fault of their own. Although exempting a church from the payment of a tax may allow it to keep more of its resources to advance its own purposes, the exemption does not have the primary effect of advancing religion through the government's activities and influence. We conclude the exemption in section 201.066 of the TUCA does not violate the second prong of the *Lemon* test. *See Hernandaz*, 490 U.S. at 696; *Amos*, 483 U.S. at 336–37.

With respect to the third prong of the *Lemon* test, the "[e]ntanglement must be 'excessive' before it runs afoul of the Establishment Clause." *Agostini v. Felton*, 521 U.S. 203, 233 (1997). Some level of involvement between church and state is permissible. *Id.* This prong focuses on the character and purpose of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority. *Id.* at 232.

Spicer asserts the imposition on a church of a generally applicable tax does not lead to excessive entanglement between a church and the government. However, the focus of our analysis is not whether the Legislature could have permissibly decided to require a church to participate in the unemployment compensation system. Rather, we must determine whether the Legislature's decision to exempt a church from the system leads to impermissible entanglement

between the government and a church. The exemption in section 201.066 removes any ongoing interaction between the government and a church regarding the unemployment compensation system. Because there is no continuing or invasive relationship between the government and a church, the exemption does not violate the third prong of the *Lemon* test. *See Agostini*, 521 U.S. at 233.

We conclude the exemption of service in the employ of a church from the definition of employment in the TUCA does not violate the Establishment Clause.[10] We resolve Spicer's second issue against him.

*Equal Protection Clause*

In his third issue, Spicer asserts the exemption in section 201.066 contravenes the Equal Protection Clause of the Fourteenth Amendment by creating a classification that impermissibly interferes with a fundamental right. Spicer specifically argues the Legislature's choice to exempt service in the employ of a church from the definition of employment in the TUCA is subject to strict scrutiny because it violates his right to freely exercise his religion, specifically his right to play music during worship services.

In analyzing Spicer's equal protection claim, we must first consider whether exempting service in the employ of a church from the definition of employment in the TUCA violates his right to freely exercise his religious beliefs under the First Amendment of the United States Constitution, thereby triggering strict scrutiny. Spicer argues a statute that impacts his rights under the Free Exercise Clause must be strictly scrutinized and "upheld only if it is precisely

---

[10] *See also St. Martin Evangelical Lutheran Church*, 451 U.S. at 788 (declining to reach constitutional challenges because school fell within definition of church in the FUTA and the South Dakota unemployment compensation statute); *Christian Jew Found.*, 653 S.W.2d at 614; *Rojas*, 127 F.3d at 187–89 (exemption for religious institutions contained in FUTA and in Rhode Island unemployment tax statute did not violate Establishment Clause); *Von Stauffenberg v. Dist. Unemployment Compensation Bd.*, 459 F.2d 1128, 1130–33 (D.C. 1972) (per curiam) (exemption of religious organization from District of Columbia unemployment compensation statute did not violate Establishment Clause); *Saucier v. Emp't Sec. Dept.*, 954 P.2d 285, 288–89 (Wash. Ct. App. 1998) (exemption of church from Washington's unemployment compensation statute did not violate Establishment Clause); *In re Klein*, 585 N.E.2d 809, 811–14 (N.Y. 1991) (exemption of persons performing duties of religious nature at place of worship from New York unemployment compensation statute did not violate Establishment Clause); *Konecny v. D.C. Dep't of Emp't Servs.*, 447 A.2d 31, 33–37 (D.C. 1982) (exemption of churches from District of Columbia unemployment compensation statute did not violate Establishment Clause).

tailored to further a compelling government interest." We conclude that, assuming the compelling-interest standard applies to Spicer's First Amendment claim, he has failed to establish the exemption in section 201.066 of the TUCA violates his right to freely exercise his religion.[11]

The Free Exercise Clause, which has been made applicable to the States by the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. CONST. amend I. With respect to this clause, "[t]he crucial word in the constitutional text is 'prohibit.' For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) (quoting *Sherbert v. Verner*, 374 U.S. 398, 412 (1963) (Douglas, J., concurring)).

The basic purpose of the Free Exercise Clause is to prevent the government from passing laws that discriminate against some or all religious beliefs or regulate or prohibit conduct

---

[11] In 1990, the Supreme Court stated that the "Free Exercise Clause of the First Amendment does not prohibit governments from burdening religious practices through generally applicable laws." *Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal,* 546 U.S. 418, 424 (2006) (describing its holding in *Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990)). Further, in *Smith*, the Supreme Court held that the "compelling interest" test was not applicable to a challenge to a generally applicable prohibition of socially harmful conduct. *Smith*, 494 U.S. at 884–85. In response, Congress enacted the Religious Freedom Restoration Act of 1993 (the RFRA), 42 U.S.C.A. §§ 2000bb–2000bb-4 (West 2012), with which it intended to "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) . . . in all cases where free exercise of religion is substantially burdened." § 2000bb(b)(1); *see also Sossamon v. Texas*, 131 S. Ct. 1651, 1655–56 (2011). In other words, "the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, 'even if the burden results from a rule of general applicability' unless the government can satisfy the compelling-interest test." *Gonzales*, 546 U.S. at 424.

The Supreme Court subsequently found the RFRA was unconstitutional as applied to state and local governments because it exceeded Congress's power under section five of the Fourteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507, 536 (1997). Congress responded by enacting the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.A. §§ 2000cc–2000cc-5 (West 2012) (the RLUIPA) pursuant to its Spending Clause and Commerce Clause authority. The RLUIPA borrows important elements from the RFRA—which continues to apply to the Federal Government—but the RLUIPA is less sweeping in scope. *See Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). It targets two areas of state and local action: land-use regulation, 42 U.S.C.A. § 2000cc (RLUIPA § 2), and restrictions on the religious exercise of institutionalized persons, § 2000cc–1 (RLUIPA § 3). *See Cutter*, 544 U.S. at 715.

In 1999, the Texas Legislature enacted the Texas Religious Freedom Restoration Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 110.001–.012 (West 2011) (the TRFRA). Like the RFRA, the TRFRA provides, in part, that government "may not substantially burden a person's free exercise of religion [unless it] demonstrates that the application of the burden to the person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that interest." *Id.* at §110.003(a)–(b); *see also Barr v. City of Sinton*, 295 S.W.3d 287, 296 (Tex. 2009). Spicer has relied on neither the RLUIPA nor the TRFRA in support of his claim that the exemption of services in the employ of a church from the definition of employment in the TUCA impermissibly burdened his right to freely exercise his religion.

because it is undertaken for religious reasons. *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 532. A Free Exercise claim will be sustained only if the "government has placed a substantial burden on the observation of a central religious belief" without "a compelling governmental interest justif[ying] the burden." *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 384–85 (1990) (quoting *Hernandez*, 490 U.S. at 699).

The government imposes a substantial burden on the free exercise of religion by forcing an individual to choose between "following the precepts of [his] religion and forfeiting benefits," *Sherbert*, 374 U.S. at 404, or by "put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). However, an individual's right to freely exercise his religion is not necessarily violated simply because his religious practice is burdened by a governmental program. *Id.* Further, the denial of an affirmative benefit from the government is of a "wholly different, less intrusive nature than affirmative compulsion or prohibition, by threat of penal sanctions, for conduct that has religious implications." *Bowen v. Roy*, 476 U.S. 693, 704 (1986).

Spicer's brief focuses on the alleged lack of a compelling state interest and includes no argument as to how the exemption in section 201.066 put substantial pressure on him either to modify his behavior or to violate his religious beliefs. Further, we can discern nothing about the exemption that affected Spicer's ability to play music during church services, violated Spicer's religious beliefs, or required Spicer to work under conditions forbidden by his religion. *See Sherbert*, 374 U.S. at 399–406. We conclude that exempting service performed in the employ of a church from the definition of employment in the TUCA placed, at most, an inconsequential burden on Spicer's ability to play music during church services and does not violate Spicer's right to freely exercise his religion. *See Johnson v. Robison*, 415 U.S. 361, 385 (1974) ("The

–17–

withholding of educational benefits involves only an incidental burden upon appellee's free exercise of religion–if, indeed, any burden exists at all.").

We next turn to Spicer's contention that the exemption violates his right to equal protection. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. At its core, the Fourteenth Amendment guarantees the equal treatment of persons that are similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Spicer's equal protection claim is premised on his Free Exercise Clause claim: he contends exempting service in the employ of a church from the definition of employment in TUCA is an improper classification that impinges on his right to free exercise of religion. When, as here, the underlying free exercise claim has failed, the Supreme Court requires only a "rational basis scrutiny" of an equal protection claim based on the same facts. *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004).

Under rational-basis review, a law will be upheld if it is rationally related to a legitimate governmental purpose. *Pennell v. City of San Jose*, 485 U.S. 1, 14 (1988). A tax classification is "constitutionally valid if 'there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012). A statute must be upheld against an equal protection challenge if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Further, "because the classification is presumed constitutional, the 'burden is on the one

attacking the legislative arrangement to negative every conceivable basis which might support it.'" *Id.* at 2080–81 (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)).

In construing similar unemployment compensation statutes, including the FUTA, courts have determined that exempting religious organizations from paying the excise tax served the legitimate governmental purpose of enhancing the efficient administration of the federal-state unemployment insurance programs by excluding from coverage a variety of workers whose employment patterns are irregular or whose wages are not easily accountable, *Rojas*, 127 F.3d at 188–89; *Saucier*, 954 P.2d at 288–89, and by eliminating "the need for the government to review employment decisions made on the basis of religious rationales." *Rojas*, 127 F.3d at 188; *see also Christian Jew Found.*, 653 S.W.2d at 615 ("[A] clearly discernible reason for the exclusion [of religious employers from the unemployment compensation system] is to avoid the possibility of a church-State 'entanglement' which might result but for the exclusion."). The efficient administration of the Texas unemployment compensation system could conceivably provide a plausible policy reason for the exemption of service in the employ of the church from the definition of employment in TUCA. *See Heller*, 509 U.S. at 320 ("[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." (quoting *Beach Commc'ns*, 508 U.S. at 315)). Further, the facts supporting this plausible reason could have been considered to be true by the Texas Legislature when deciding to exempt churches from paying the excise tax. *See Armour*, 132 S. Ct. at 2080 ("[W]e are not to 'pronounce' this classification 'unconstitutional unless in light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.'" (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938)). Finally, excluding religious organizations from paying the excise tax is not so attenuated to this goal as to render the

exemption arbitrary or irrational. *See id.* Based on rational-basis scrutiny, we conclude section 201.066 of the TUCA does not violate the Equal Protection Clause. We resolve Spicer's third issue against him.

*Section 1983*

In his first issue, Spicer asserts "it might well be a violation of 42 U.S.C. Section 1983 for the TWC Appeal Tribunal, the TWC, and the District Court all to fail even to acknowledge the existence of the constitutional principle" on which he bases his claim. In general, section 1983 creates a private right of action for abridgement by a "person" acting under the color of state law of any rights, privileges, or immunities secured by the United States Constitution and laws. 42 U.S.C.A. § 1983 (West 2012); *Richardson v. McKnight*, 521 U.S. 399, 403 (1997). Spicer did not assert this claim either before the TWC or in the trial court. Accordingly, he has failed to preserve this argument for appellate review. *See* TEX. R. APP. P. 33.1(a)(1). In any event, neither the State of Texas nor its agencies are a "person" within the purview of section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). We resolve Spicer's first issue against him.

**Conclusion**

We conclude the trial court did not err by determining there was substantial evidence supporting the TWC's denial of unemployment benefits to Spicer. We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

130465F.P05

–20–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DOUGLAS SPICER, Appellant

No. 05-13-00465-CV        V.

TEXAS WORKFORCE COMMISSION
AND PLEASANT VALLEY UNITED
METHODIST CHURCH, Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-12-09281.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees the Texas Workforce Commission and Pleasant Valley United Methodist Church recover their costs of this appeal from appellant Douglas Spicer.

Judgment entered this 22nd day of April, 2014.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE