**AFFIRM; and Opinion Filed May 10, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01331-CV

**FRANKLIN COX, Appellant**

**V.**

**TEXAS WORKFORCE COMMISSION,**
**LINCOLN TECHNICAL INSTITUTE, INC., AND UCAC, INC., Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-01261**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

Franklin Cox appeals the trial court's judgment affirming the decision of the Texas

Workforce Commission ("TWC") that he was disqualified from receiving unemployment benefits.

Because there was substantial evidence to support the TWC's decision, we affirm the trial court's

judgment.[1]

### BACKGROUND

Cox was employed at Lincoln Technical Institute ("Lincoln") as a tool room attendant from

April 2013 until June 2016, when he was terminated for unsatisfactory job performance. After his

termination, Cox sought unemployment benefits in an application to the TWC. The TWC

---

[1] Cox lists UCAC, Inc. as an appellee in his brief, but does not challenge any trial court ruling with respect to UCAC, Inc. Accordingly, we affirm the trial court's judgment as to UCAC, Inc. without further discussion.

determined that Cox was disqualified from receiving unemployment benefits because he was discharged for misconduct. Cox appealed the decision to each level within the TWC and then filed a petition for judicial review in the trial court. His petition alleged that because he was "fired for inability to perform his job to employer's satisfaction, rather than misconduct," he was eligible for unemployment compensation.

The TWC and Lincoln answered and filed a joint motion for summary judgment on the ground that there was substantial evidence to support the TWC's decision. They offered summary judgment evidence through the affidavit of Cox's supervisor Rick Calverley. Calverley stated that Cox performed his duties, including proper maintenance of Lincoln's tool room, welding lab, and ramp room, to Calverley's satisfaction until January 2016. Calverley testified further:

- He became aware of argon gas leaks in the welding lab on January 21, 2016;

- He directed Cox to test for leaks in the welding booths, Teflon tape the fittings, plug gas lines that had valves left open, repair a line in one of the booths, and retest the gas lines after repair;

- When Cox did not complete these tasks, Calverley sent him reminders, granted multiple extensions, and issued verbal and written warnings, explaining that the tasks were of the highest priority because the leaks were a safety hazard for students and were costly. Specifically, Calverley sent Cox a "Letter of Concern" dated February 2, 2016, emphasizing the need for Cox to complete the assigned tasks. Cox was warned in the letter that continued violations would result in further disciplinary action. Cox refused to sign the letter to indicate that he "read and understand[s] this disciplinary action";

- Calverley followed up with Cox's progress on the assigned tasks after sending the letter of concern. He instructed Cox that he could use overtime and could order tools, if needed, to complete the tasks;

- Cox had not completed the tasks by March 22, 2016, when Calverley issued him an "Employee Success Plan" listing "performance concerns" including failure to complete the tasks relating to the argon leak. Calverley warned Cox that failure to improve his performance to the levels described in the plan would result in further disciplinary action, potentially including termination of Cox's employment. Cox again refused to sign the document;

- By April 1, 2016, Cox had not completed his assigned tasks. Calverley reassigned the tasks to another employee, who completed them within a few days; and

- Calverley terminated Cox's employment with Lincoln effective June 23, 2016, for unsatisfactory job performance and failure to meet the expectations listed in the Employee Success Plan. In the "Termination Transmittal Form," Calverley noted that "Mr. Cox has been asked to repair leaking gas lines in weld lab. After repeatedly not finishing task, another employee spent 4 days repairing all lines and leaks."

Calverley attached the "Letter of Concern," "Employee Success Plan," and "Termination Transmittal Form" that were given to Cox to his affidavit.

Cox filed a summary judgment response, arguing that there was "a triable issue of fact as to whether he suffered an adverse employment action" and that the TWC's ruling was not supported by substantial evidence. He contended that "misconduct" precluding receipt of unemployment benefits "does not include behavior that amounts only to poor performance like carelessness, lack of skill, or errors made in good faith." He objected to "summary evidence that is not admissible or properly authenticated," but specifically argued only that the TWC's findings of fact and record were inadmissible. Cox also stated he "did make emergency repair" to a welding booth where a broken line was leaking gas. His response included an affidavit in which he swore

"that all the facts and statements herein are true and correct." But he did not offer any summary judgment evidence to contradict the evidence offered by Lincoln and the TWC.

The trial court granted the motion for summary judgment. This appeal followed. In two issues, Cox contends the trial court erred by granting summary judgment because there were genuine issues of material fact whether the TWC's ruling was supported by substantial evidence and because Calverley's affidavit was insufficient.

## STANDARDS OF REVIEW

We review a summary judgment de novo. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (per curiam). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

Trial courts review TWC decisions regarding unemployment benefits "by trial de novo based on the substantial evidence rule." TEX. LAB. CODE § 212.202(a); *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). Under this standard, the TWC's ruling carries a presumption of validity, and the party seeking to set aside the decision has the burden of showing that it was not supported by "substantial evidence." *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Spicer v. Tex. Workforce Comm'n*, 430 S.W.3d 526, 532 (Tex. App.—Dallas 2014, no pet.). "Substantial evidence" is more than a scintilla and less than a preponderance. *Terrill v. Tex. Workforce Comm'n*, No. 05-17-00349-CV, 2018 WL 1616361, at *2 (Tex. App.—Dallas Apr. 4,

2018, no pet.) (mem. op.). The evidence in the record may preponderate against the TWC's decision but still amount to substantial evidence. *Spicer*, 430 S.W.3d at 533. A trial court may grant summary judgment in cases tried under the substantial evidence rule because the only issue before the court is a question of law. *Id.*

We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law. *Id.* We determine whether the summary judgment evidence established as a matter of law that substantial evidence existed to support the TWC decision. *Id.*

## DISCUSSION

We first consider Cox's challenges to Calverley's summary judgment affidavit, which provided the evidence supporting the TWC's and Lincoln's motion for summary judgment. In issue 1.B, Cox challenges the sufficiency of the affidavit. Cox contends that Calverley failed to disclose the basis on which he acquired personal knowledge of the facts he states in the affidavit. He argues that Calverley did not state how his job duties would have afforded him knowledge of the facts, and he argues that some of the facts Calverley stated were incorrect. He also contends the documents attached to the affidavit are not authenticated. He concludes that Calverley's affidavit is legally insufficient to support the trial court's judgment.

An affidavit supporting a motion for summary judgment must "be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). The affiant must swear that the facts in the affidavit reflect his personal knowledge. *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 791 (Tex. App.—Dallas 2013, pet. denied); *see also* TEX. R. EVID. 602 (witness may testify to matter only if evidence is introduced sufficient to support finding that witness has personal knowledge of matter). "An affiant's position or job

responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts." *Hydroscience, Inc.*, 401 S.W.3d at 791; *see also* TEX. R. EVID. 602 (evidence to prove personal knowledge may consist of witness's own testimony).

Calverley testified in paragraph 1 of his affidavit that he has "personal knowledge of all facts recited herein and state that such facts are true and correct." In paragraph 2, Calverley states:

> I am the Education Supervisor for Lincoln Technical and have served in this position since July 2013. As Education Supervisor, I oversee and supervise the day-to-day operations of the institute. This includes, but is not limited to, assigning tasks to staff, completing performance evaluations, progressively issuing performance and behavior related discipline, and making employment decisions regarding staff hiring, promotions, and termination. During his employment with Lincoln Technical, I supervised Plaintiff Franklin Cox ("Cox").

Continuing in paragraphs 2 and 3, Calverley explained that (1) his job responsibilities include "handling and/or maintaining Lincoln Technical's records, such as those referenced and attached herein"; (2) he is custodian of records for Lincoln Technical; and (3) he has referenced and attached seven pages of records concerning Cox that are "original or exact duplicates of the original." He also stated facts to support admission of the documents as records of a regularly conducted activity. *See* TEX. R. EVID. 803(6). He specifically identified the records by title, and later in the affidavit, explained how and when he prepared the records as part of his supervision of Cox. *See Hydroscience, Inc.*, 401 S.W.3d at 792 ("References to true and correct copies of documents in support of an affidavit also establishes personal knowledge."). Consequently, the documents were self-authenticating. TEX. R. EVID. 902(10) (business records accompanied by affidavit in specified form and served as required are self-authenticating).

In the remaining paragraphs of the affidavit, Calverley recounted his own communications with Cox, including verbal and written warnings regarding Cox's job performance. He also explained the circumstances that led to the warnings, culminating in reassignment of Cox's uncompleted tasks to another employee:

On April 1, 2016, I e-mailed Cox that there was still a "significant leak" in the Argon tank. I explained to Cox of the numerous reminders and deadline extensions he had already been provided to complete this task. Regardless of my reminders, Cox failed to complete *any* tasks assigned to him. I reassigned Cox's tasks to another employee, who was able to complete them within a few days.

We conclude that Calverley's affidavit met rule 166a(f)'s requirements, and the trial court did not err by considering it as summary judgment evidence. *See Hydroscience, Inc.*, 401 S.W.3d at 792. We decide Cox's issue 1.B against him.

In issues 1.A and 2, Cox contends there were genuine issues of material fact regarding whether the TWC's ruling was supported by substantial evidence. The TWC ruled that Cox "mismanaged his position of employment" and "[a]s such, . . . was discharged for misconduct connected with the last work" under labor code section 207.044.

"An individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work." TEX. LAB. CODE § 207.044. "'Misconduct' means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." *Id.* § 201.012.

Relying on *Mercer v. Ross*, 701 S.W.2d 830 (Tex. 1986), Cox contends there is no evidence of "misconduct" meeting the statutory definition. In *Mercer*, the supreme court held the TWC's decision to pay unemployment benefits was supported by substantial evidence although Mercer, a travel agent, "made a number of errors" and "was never able to do the job to her employer's satisfaction and was discharged." *Id.* at 830. The court reasoned,

TEC [Texas Employment Commission] correctly determined that mismanagement, not misconduct in general, requires intent, or such a degree of carelessness as to evidence a disregard of the consequences, whether manifested through action or inaction. If the legislature had intended that mere inability to perform duties required disqualification from benefits it could have stated so. . . .

> TEC's standard of misconduct was proper. TEC found there had been no mismanagement and there is no evidence that Mercer's conduct placed the lives or property of others in jeopardy. Therefore, TEC's decision is supported by substantial evidence in the record before us.

*Id.* at 831. Cox also contends there is no evidence that he intentionally violated a policy or rule, and "no evidence of intent or careless disregard for the consequences present in this cause."

In contrast to *Mercer*, there was evidence that Cox performed his job to his employer's satisfaction for over two years before the problems arose that led to his termination. Then, in January 2016, Cox was given a specific list of tasks to complete and a deadline for completing them. Cox did not offer any evidence that he could not perform the tasks or that the requests were unreasonable. He did not offer any explanation to Calverley for his failure to complete the tasks despite the many extensions of time and specific warnings he received. Calverley extended the deadline for completing the tasks several times over a period of months to give Cox an opportunity to finish the work, but he never did. Calverley informed Cox that the work was his highest priority and that refusing to follow his supervisor's reasonable directive was in violation of a provision in the employee handbook. Calverley instructed Cox to "seek guidance from the shift Education Supervisor" if he had other daily tasks that interfered with completing the work. After months of extended deadlines, Calverley finally assigned the work to another employee, who completed the work in four days. This summary judgment evidence supports a conclusion by the TWC that Cox mismanaged his position of employment by "such a degree of carelessness as to evidence a disregard of the consequences, whether manifested through action or inaction." *Cf. id.* at 831.

In *Potts v. Texas Employment Commission*, 884 S.W.2d 879, 881 (Tex. App.—Dallas 1994, no writ), the summary judgment evidence showed that Potts, a warehouseman, was discharged by his employer for repeatedly failing to follow written requisition procedures and for misfiling requisitions. The TEC concluded that because Potts failed to follow procedures and did not use a reasonable degree of care in the performance of his duties, he engaged in mismanagement

–8–

or neglect that placed the property of others in jeopardy. *Id.* at 883. In concluding that the trial court was correct in granting summary judgment for the employer and the Commission, we explained:

> ABCO [the employer] counseled Potts at least three times about his poor job performance in misfiling orders and following procedures. After each counseling session, Potts's performance would improve for a period of time before he would return to an unacceptable level of performance. The trial court correctly found substantial evidence existed to support TEC's denial of benefits for mismanagement.

> Potts did not follow simple, written procedures for filling requisitions. He did not always have the recipient of the requisitioned materials, check the materials delivered and complete the necessary documentation—purely mechanical, administrative tasks. That Potts would follow procedures for some time after a reprimand showed he could do the work and was aware of its requirements. His repeated failure to follow the procedures evidences neglect. Potts's neglect endangered ABCO's property. ABCO suffered property loss because it incurred extra expenses correcting Potts's negligent acts.

> TEC and ABCO established that there was substantial evidence to support TEC's decision as a matter of law.

*Id.* at 883 (citation omitted). Here, as in *Potts*, we conclude that substantial evidence existed to support the TWC's denial of benefits for mismanagement under labor code sections 201.012 and 207.044.

Cox also argues that he raised genuine issues of material fact, including (1) whether he completed the repairs of the broken argon line, (2) whether Lincoln violated its own "performance appraisal program" by taking disciplinary action against him without giving him a performance review in January 2016, and (3) whether there was any evidence of poor performance, given his most recent performance review in January 2015 showing that he met expectations in the performance of his job duties. Cox also argues that he did complete some of the assigned tasks; it was impossible to complete other assigned tasks in the time allotted; he was not authorized to do some of the assigned tasks; and in any event, the tasks were not a high priority. But Lincoln and the TWC offered evidence to contradict Cox's contentions, as we have discussed. And in any

event, our review concerns whether the summary judgment evidence established as a matter of law that substantial evidence existed to support the TWC's decision, not whether there was some evidence to the contrary. *See Spicer*, 430 S.W.3d at 532–33. Even if the evidence had preponderated against the TWC's decision, we have concluded that there was more than a scintilla, and thus "substantial evidence," to support the TWC's decision. *See id.* We conclude that Cox did not meet his burden to show that the TWC's decision was not supported by "substantial evidence." *Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Spicer*, 430 S.W.3d at 532–33. We decide issues 1.A and 2 against Cox.

**CONCLUSION**

We affirm the trial court's judgment.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

171331F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

FRANKLIN COX, Appellant

No. 05-17-01331-CV     V.

TEXAS WORKFORCE COMMISSION,
LINCOLN TECHNICAL INSTITUTE,
INC., AND UCAC, INC., Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-01261.
Opinion delivered by Justice Osborne;
Justices Schenck and Reichek,
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Texas Workforce Commission, Lincoln Technical Institute, Inc. and UCAC, Inc. recover their costs of this appeal from appellant Franklin Cox.

Judgment entered this 10th day of May, 2019.