**REVERSE and REMAND in part; AFFIRMED in part; and Opinion Filed June 24, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01484-CV

**PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESSOR TO NATIONAL CITY BANK, AND NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK OF INDIANA, Appellants**

**V.**

**JOHN HOWARD AND AMY HOWARD, Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-01559-2010**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Reichek

In this suit concerning the default on a note and foreclosure sale of a private home, PNC Mortgage, a division of PNC Bank, N.A. successor to National City Bank ("PNC"), and National City Mortgage, a division of National City Bank of Indiana ("Bank of Indiana"), appeal a partial summary judgment in favor of John and Amy Howard on their claims against Bank of Indiana. PNC also appeals the final judgment following a bench trial on stipulated facts ordering that it take nothing by its claims against the Howards. In four issues, the banks generally contend the trial court erred in its application of the law to the undisputed summary judgment evidence and stipulated facts and in failing to file findings of fact and conclusions of law. For the reasons that

follow, we affirm the trial court's judgment in part, reverse and render in part, and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

The undisputed facts relevant to our resolution of this appeal are as follows. In March 2003, the Howards purchased a home in Frisco, Texas and obtained two purchase money lien mortgages from First Franklin Financial Corporation. On March 24, 2005, the Howards entered into a loan refinance transaction with Bank of Indiana. In connection with the refinancing, the Howards executed a note and deed of trust on the property in favor of Bank of Indiana. The Howards then used the loan proceeds they obtained from Bank of Indiana to pay off the mortgage debts they owed to First Franklin.

On March 4, 2008, Bank of Indiana assigned the note and deed of trust to National City Mortgage Co., a subsidiary of National City Bank located in Ohio (National City Bank). The assignment was recorded in the Collin County Records.

The Howards stopped making payments on the note after November 1, 2008 and defaulted under the note's terms. On January 20, 2009, National City Bank sent notices of default and intent to accelerate to both John and Amy Howard. On that date, National City Bank was the servicer and holder of the note and deed of trust. On June 19, 2009, National City Bank, as servicer and holder of the note and deed of trust, sent the Howards notices of acceleration through its attorneys. On the same day that National City Bank accelerated the note, Bank of Indiana, which had previously assigned the note and deed of trust to National City Bank, appointed Greg Bertrand as a substitute trustee to conduct a foreclosure sale of the Howard's property.

In November 2009, National City Bank was merged into PNC and PNC became the servicer of the Howard's note. Four months later, in March 2010, Bank of Indiana, through its attorneys, sent a notice of acceleration to Amy Howard. The notice listed Bank of Indiana as the

mortgagee and PNC as the mortgage servicer. On April 6, 2010, Bertrand sold the Howard's property at a nonjudicial foreclosure sale on behalf of Bank of Indiana. According to the substitute trustee's deed, the property was sold on behalf of, and also purchased by, Bank of Indiana.

Ten days later, the Howards filed this suit against Bank of Indiana and PNC seeking to set aside the foreclosure sale and resulting substitute trustee's deed. In their petition, the Howards asserted the foreclosure was void because Bank of Indiana was not the mortgagee at the time it appointed the substitute trustee and held no interest in the deed of trust at the time the property was sold on its behalf.

Almost four years later, in February 2014, the Howards filed a motion for partial traditional summary judgment against Bank of Indiana. In the motion, the Howards argued the foreclosure sale was void because the sale was both noticed by and conducted on behalf of Bank of Indiana, which had assigned its interest in the note and deed of trust to another bank prior to the foreclosure. The Howards further contended the foreclosure by Bank of Indiana violated the terms of the deed of trust which stated that a substitute trustee could only be appointed by the lender and, at the time the substitute trustee was appointed, the lender was National City Bank, not Bank of Indiana. In support of their motion, the Howards submitted documents including the note, the deed of trust, the assignment of the deed of trust from Bank of Indiana to National City Bank, the substitute trustee appointment signed by a representative of Bank of Indiana, and the notice of substitute trustee sale and the substitute trustee's deed listing Bank of Indiana as the mortgagee.

Although the motion was directed solely at Bank of Indiana, both PNC and Bank of Indiana filed a response arguing the Howards had asserted "a cause of action without recognition in Texas" and they were attempting to sidestep the elements of a wrongful foreclosure claim under section 51.002 of the Texas Property Code. The banks further construed the Howards' motion as challenging the validity of the chain of assignments of the note and deed of trust and contended

the Howards failed to produce any evidence that would allow the trial court to declare that "Defendants were neither the holder nor the owner of the loan." Neither PNC nor Bank of Indiana submitted any summary judgment evidence in support of their response.

In their reply to the banks' response, the Howards noted that their motion was not directed at PNC or any interest it might have in the loan. The motion was directed solely at Bank of Indiana because that was the entity that foreclosed on their property after assigning away its rights in the note and deed of trust. Following a hearing, the trial court granted the Howards' motion and rendered judgment declaring the foreclosure sale void ab initio.

On January 8, 2015, PNC and Bank of Indiana filed an amended answer and, for the first time, asserted counterclaims against the Howards seeking relief including a declaratory judgment for contractual and equitable subrogation and foreclosure of the equitable lien. Four months later, in May 2015, PNC filed a separate lawsuit against the Howards seeking damages for their failure to perform their obligations under the note. The Howards answered and asserted the affirmative defense of limitations. The suit on the note was consolidated into this cause in October 2016.

On April 3, 2017, the parties filed a joint motion for judgment on an agreed statement of facts, but reserved the right to introduce additional evidence at trial. A bench trial was conducted on April 5, at which the Howards rested on the stipulated facts. PNC and Bank of Indiana called both John and Amy Howard as witnesses and elicited testimony concerning amounts owed on the note, the refinancing of the loan in 2005, notices sent to the Howards, and Amy Howard's bankruptcy. Based on the evidence presented, the trial court rendered judgment that PNC and Bank of Indiana take nothing by their claims against the Howards and ordered that the note and lien on the Howards' property were void and unenforceable. The judgment further incorporated the partial summary judgment rendered in favor of the Howards and awarded the Howards $75,000

in attorney's fees. All other relief requested in the case was denied. PNC and Bank of Indiana then brought this appeal.

## Analysis

### I. Summary Judgment on the Foreclosure

In their second issue, PNC and Bank of Indiana contend the trial court erred in granting the Howards' motion for partial summary judgment. We review the grant of a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Spicer v. Tex. Workforce Comm'n*, 430 S.W.3d 526, 532 (Tex. App.—Dallas 2014, no pet.). A movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Spicer*, 430 S.W.3d at 532; *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.). We consider the summary judgment evidence in the light most favorable to the non-movant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Spicer*, 430 S.W.3d at 532. When a plaintiff establishes his right to summary judgment as a matter of law, the burden then shifts to the defendant as non-movant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment. *Boudreau v. Fed. Tr. Bank*, 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied).

The trial court in this case granted summary judgment against Bank of Indiana and declared the foreclosure on the Howards' property void ab initio. One of the grounds asserted in the summary judgment motion was that Bank of Indiana had no authority to appoint a substitute trustee and foreclose on the property because it transferred all beneficial interest in the note and deed of trust to National City Bank before it instituted foreclosure proceedings. This assignment was recorded in the Collin County Records. Pursuant to Texas law, a nonjudicial foreclosure may be

initiated by the current mortgagee. *Santiago v. BAC Home Loans Servicing, L.P.*, 20 F. Supp. 3d 585, 589 (W.D. Tex. 2014). If the security interest has been assigned of record, the current mortgagee is the last person to whom the security interest has been assigned of record. TEX. PROP. CODE ANN. § 51.0001(4)(C). The Howards provided summary judgment evidence that Bank of Indiana assigned its security interest in the Howard property to National City Bank before the Howards defaulted on the note. The summary judgment evidence also showed that, at the time the note was accelerated, National City Bank was the mortgagee. The evidence showed, therefore, that Bank of Indiana was not the current mortgagee and could not initiate foreclosure proceedings. *See Santiago*, 20 F. Supp. 3d at 589.

Because it was not the mortgagee, Bank of Indiana also had no authority to appoint a substitute trustee to conduct the foreclosure. This Court addressed a similar situation in *Burnett v. Manufacturers Hanover Trust Co.*, 593 S.W.2d 755 (Tex. App.—Dallas 1979, writ ref'd n.r.e.). In *Burnett*, the original mortgagee on a loan for real property appointed a substitute trustee to foreclose on the property after it had assigned the note to another entity. *Id*. at 756. The deed of trust required the appointment of the substitute trustee to be made by the holder of the note. *Id*. at 757. Because the original mortgagee was no longer the holder of the note, we concluded its appointment of the substitute trustee violated the terms of the deed of trust. *Id*. at 758. A foreclosure sale that is not conducted within the authority conferred by the deed of trust is void. *See id*. at 757.

In this case, the deed of trust stated that a substitute trustee may be appointed by the "Lender." The summary judgment evidence showed that, at the time of the foreclosure, National City Bank was the current lender. Under the terms of the deed of trust, therefore, Bank of Indiana had no authority to appoint the substitute trustee. We conclude the Howards met their burden to

show their entitlement to summary judgment as a matter of law.  The burden then shifted to the Bank of Indiana to present evidence sufficient to raise a genuine issue of material fact.

As noted above, PNC and Bank of Indiana filed a joint response to the Howards' motion, but submitted no evidence in support.  Instead, the banks argued the Howards failed to provide proof that a wrongful foreclosure occurred under section 51.002 of the Texas Property Code.[1]  The banks further asserted the Howards had no standing to challenge the assignment of the note and deed of trust.  But, as the banks now concede, the Howards' claim that Bank of Indiana had no authority to foreclose on their property was not a claim for wrongful foreclosure under section 51.002 of the property code.  And the Howards relied upon, rather than challenged, the assignment of the note and deed of trust to support their right of recovery.

On appeal, the banks now assert for the first time that PNC simply misidentified itself as Bank of Indiana in the foreclosure proceedings and the trial court "failed to appreciate that . . . Bank of Indiana, National City Bank, and PNC were all merged with and into each other."  On that basis, the banks contend the trial court erred in determining in its summary judgment ruling that PNC, as the successor bank, lacked authority to foreclose on the Howards' property.  This argument is misdirected because the trial court made no such determination.  The trial court determined only that *Bank of Indiana* lacked authority in April 2010 to appoint a substitute trustee and foreclose on the property because Bank of Indiana had no right, title, or interest in the note or deed of trust at that time.  The banks do not challenge this finding.

To the extent the trial court "failed to appreciate" that Bank of Indiana merged into National City Bank, and then PNC, this is because the banks never submitted any evidence or made any arguments regarding an alleged merger or a purported  "misidentification," as a reason to deny the

---

[1] Section 51.002 governs the manner in which foreclosure sales are conducted and sets forth requirements concerning, among other things, notices and when and where the sale must occur.  TEX. PROP. CODE ANN. § 51.002.

Howards' motion for summary judgment. We note that PNC and Bank of Indiana have been listed and treated as separate parties, not merged entities, throughout the proceedings in this case. We cannot reverse a summary judgment on a ground not raised below. *Pinnacle Anesthesia Consultants, P.A. v. St. Paul Mercury Ins. Co.*, 359 S.W.3d 389, 398 (Tex. App.—Dallas 2012, pet. denied); *Shih v. Tamisea*, 306 S.W.3d 939, 944 (Tex. App.—Dallas 2010, no pet.) (except to attack legal sufficiency of movant's grounds, non-movant must expressly present to trial court any reason for avoiding movant's entitlement to summary judgment).

The banks point to one reference to the mergers in the summary judgment proceedings to argue that the issue was sufficiently raised in the trial court. This reference is in a footnote on the first page of a motion for summary judgment the banks filed nearly a year after the Howards filed their motion. There are several reasons why this footnote did not sufficiently raise the merger and misidentification issues to either defeat the Howard's motion for summary judgment or preserve these issues for review on appeal.

First, although the trial court conducted hearings on both motions for summary judgment before granting the Howards' motion, the trial court's order states it considered only the Howards' motion in making its ruling. The record does not reveal any ruling on the banks' motion.

Even if the trial court considered the banks' motion for summary judgment before granting the Howards' motion, the footnote outlining the mergers was for identification purposes only and bore no relevance to the grounds asserted by the banks for summary judgment. The banks made no argument regarding an alleged misidentification in the foreclosure documents or the effect of the alleged merger of Bank of Indiana with National City Bank and PNC on the Howards' claim against Bank of Indiana. Indeed, the banks make no argument even on appeal regarding the effect of the alleged misidentification other than to assert it occurred.

Next, the banks did not submit any summary judgment evidence in support of their merger assertions. Mere assertions are insufficient to create a fact issue precluding summary judgment. *Boudreau*, 155 S.W.3d at 743. Although the banks suggest the trial court could have taken judicial notice of the mergers, they never requested it do so. Nor did they present any arguments that might have prompted the trial court to do so sua sponte.

Finally, the footnote on which the banks rely does not state when any of the mergers took place. Accordingly, the trial court was not provided with any information in the summary judgment proceedings from which it could have concluded that Bank of Indiana merged with National City Bank and/or PNC before it commenced foreclosure proceedings on the Howards' property. In other words, there is nothing in the footnote to suggest the mergers occurred during a time period that would impact the Howards' claim that Bank of Indiana had no interest in the note and deed of trust at the time it foreclosed.

As a separate basis to reverse the summary judgment, the banks argue the summary judgment evidence shows that PNC "adequately designated" a substitute trustee under the terms of the deed of trust by having the trustee's law firm send a notice of acceleration to Amy Howard in March 2010. As with the banks' arguments concerning the alleged mergers and misidentification, this reason to deny the Howards' motion for summary judgment was never presented to the trial court. Even if we consider the argument as a challenge to the legal sufficiency of the Howards' grounds for summary judgment, and even if we consider the March 2010 notice of acceleration to be an effective appointment of a substitute trustee, PNC does not address the fact that the acceleration notice states PNC was acting in its capacity as mortgage servicer for Bank of Indiana, not as the lender, in authorizing the substitute trustee to foreclose. In fact, PNC later stipulated at trial that the March 2010 notice of acceleration was sent by Bank of Indiana, not PNC. Accordingly, this notice does not raise a genuine issue of material fact as to the Howards' claim

–9–

that Bank of Indiana appointed the substitute trustee in violation of the terms of the deed of trust. *See Burnett*, 593 S.W.2d at 758.

In their last challenge to the summary judgment, the banks contend the Howards failed to prove the elements of "wrongful foreclosure" as a matter of law because they did not show any irregularity in the sale process or that the sale resulted in an inadequate sales price. In a footnote to their brief, the banks acknowledge that the Howards' claim alleging the foreclosure sale was conducted without authority is different than a claim alleging wrongful foreclosure based on irregularities occurring within the sale. The banks go on to assert, however, without argument or authority, that PNC's misidentification of itself as Bank of Indiana in the foreclosure documents was an irregularity in the sale proceeding requiring the Howards to show an inadequate sale price. The failure to specifically argue and analyze one's position or provide authorities waives any error on appeal. *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.). And again, PNC never argued or presented any evidence in the summary judgment proceedings below to show that the foreclosure conducted on behalf of Bank of Indiana was the result of a misidentification. We conclude the banks failed to raise a genuine issue of material fact to defeat the Howards' motion for summary judgment and the trial court properly declared the foreclosure sale by Bank of Indiana void. We resolve the banks' second issue against them.

## II. Equitable Subrogation

In their third issue, the banks contend the trial court erred in failing to grant judgment in favor of PNC following the bench trial on its claim for equitable subrogation because PNC's right to subrogation was established by the stipulated evidence. According to the banks, to the extent the Howards used the proceeds of the loan they obtained from Bank of Indiana to pay off their mortgage debt with First Franklin in the 2005 refinancing transaction, the banks became subrogated to First Franklin's rights and assumed their lien position. The banks argue, therefore,

that PNC now has a valid equitable lien on the Howard's property and it should be allowed to foreclose this lien.

PNC is asserting an equitable lien, rather than seeking to foreclose the lien created by the deed of trust executed as part of the loan refinancing transaction, because, as counsel for the banks stated at trial, they "admittedly have a limitations problem." The banks stipulated before trial that National City Bank, as the holder of the note and deed of trust at the time the Howards defaulted, properly accelerated the note on June 19, 2009. Once a note is accelerated, the cause of action for foreclosure of the deed of trust lien securing the note accrues and the sale of the property must occur within four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(b); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 574 (Tex. 2001). When the four-year period expires, the real-property lien, and the power of sale to enforce the lien, become void. *See Wolf*, 44 S.W.3d at 567.

The acceleration by National City Bank was effective as to PNC as the subsequent holder of the note and deed of trust. *Id.* It is undisputed that PNC asserted no lien claims against the Howards until January 2015, more than five years after the note was accelerated. The banks contend this limitations issue does not affect PNC's equitable lien claim because a subrogation cause of action does not accrue until the maturity date of the underlying debt that was paid off in the refinancing.[2] *See Gillespie v. Ocwen Loan Servicing, LLC*, No. 4:14-cv-00279, 2015 WL 12582796, at *4 (S.D. Tex. Oct. 28, 2015).

A party asserting a claim for equitable subrogation bears the burden of establishing entitlement to it. *Murray v. Cadle*, 257 S.W.3d 291, 300 (Tex. App.—Dallas 2008, pet. denied). When determining whether a party is entitled to equitable subrogation, the trial court must balance

---

[2] The banks do not specify the maturity date of the underlying debt, nor point us to anywhere in the record where such date could be determined. Nevertheless, we will assume for purposes of this discussion that the banks filed their equitable lien claims within the limitations period.

–11–

the equities in view of the totality of the circumstances. *Id*. The trial court has discretion in deciding cases involving equitable relief, and we will not disturb the trial court's balancing unless it is shown it would be inequitable to do so. *Id*. The Howards argued at trial, and contend again on appeal, that PNC is not entitled to an equitable lien because its inability to foreclose on the lien created by the deed of trust is due entirely to the banks' refusal to acknowledge their error in having the wrong bank foreclose in 2010 and their failure to remedy this error by having the correct bank foreclose within the period dictated by the statute of limitations.

Among the factors the court may consider in conducting its balancing test is the negligence of the party claiming subrogation. *Id*.; *see also Providence Inst. for Savs. v. Sims*, 441 S.W.2d 516, 519 (Tex. 1969) (negligence on part of party seeking subrogation of some importance when right is wholly dependent on equitable principles). Such negligence may take the form of carelessness or sloppiness in the pursuit or protection of the party's rights. *In re Okedokun*, 593 B.R. 469, 548 (Bankr. S.D. Tex. 2018). For example, in *Zapeda v. Federal Home Loan Mortgage Ass'n*, the trial court concluded the lender was not entitled to equitable subrogation because the lender was afforded ample notice and opportunity to cure the defect in its contractual lien and failed to do so. No. 4:16-cv-3121, 2018 WL 781666, at *8 (S.D. Tex. Feb. 8, 2018). According to the court, rather than simply curing the problem, the lender chose to send the borrower a "nonsense response" that failed to address or cure the issue. *Zapeda*, 2018 WL 1947848, at *2 (S.D. Tex. April 25, 2018).

Similarly, in this case, the Howards notified the banks ten days after the foreclosure sale that the wrong bank had conducted the foreclosure. At that point, the banks had more than three years to correct the problem before the statute of limitations expired. Instead, the banks responded, without any legal basis, that the Howards' claim was "a cause of action without recognition in Texas." PNC chose to wait almost five years after being notified of the issue, and five-and-a-half

–12–

years after the note was accelerated, to seek foreclosure on the property in the name of the correct bank. The statute of limitations on foreclosures would be rendered meaningless if lenders could always avoid it simply by claiming equitable subrogation. *See id.* Based on the parties' pleadings and the stipulated facts, we conclude the trial court did not abuse its discretion in refusing to award PNC the equitable relief it sought. We resolve the banks' third issue against them.

## III. Suit on the Note

In their fourth issue, the banks contend the trial court erred in failing to grant judgment in favor of PNC on its suit to recover on the note because the stipulated facts established its right to collect. The stipulated facts demonstrate, and the Howards do not dispute, that they defaulted on the note in 2008 and the note was properly accelerated in June 2009. PNC filed its suit to recover on the note in May 2015. The only affirmative defense the Howards raised to recovery on the note was that the claim was barred by the statute of limitations. The Howards bore the burden at trial of proving their limitations defense. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988).

The Howards contend that the banks' claim to recover on the note is barred by the four-year statute of limitations applicable to suits on a debt under section 16.004 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004. The banks respond that PNC's claim is governed by the limitations period found in section 3.118 of the Texas Business and Commerce Code, which states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." *See* TEX. BUS. & COM. CODE ANN. § 3.118(a). Because PNC filed its suit within six years of the date the note was accelerated, the banks contend the action was filed timely.

–13–

Where there is a debt secured by a note, which is in turn, secured by a lien, the note and lien constitute separate obligations. *See Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). Although the real property lien may be time barred, the lender may still recover on the note under the six-year limitations period applicable to negotiable instruments. *Id.* The Howards argue the six-year limitations period does not apply in this case because the note at issue is not a negotiable instrument.

The negotiability of an instrument is a question of law. *Great N. Energy Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 660 (Tex. App.—Texarkana 2017, pet. denied). A "negotiable instrument" is an "unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it . . . does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. . . ." TEX. BUS. & COM. CODE ANN. § 3.104(a). An exception to this restriction on undertakings is that the promise or order may contain "an undertaking or power to give, maintain, or protect collateral to secure payment." *Id.* Furthermore, a promise or order is not made conditional by a reference to another record for a statement of rights with respect to collateral, prepayment, or acceleration. *Id.* §3.106(b).

The Howards assert their note is not a negotiable instrument because it contains multiple undertakings and instructions in addition to the payment of money. The Howards list nine different alleged additional undertakings that render the note non-negotiable:

1) the payment of late fees;

2) the reference to a deed of trust which grants additional privileges to the holder to demand immediate payment and states under what conditions the borrower may be required to make immediate payment in full;

3) the instruction that the holder will deliver or mail notices including changes in the interest rate and monthly payments;

4) the obligation that the borrower tells the note holder, in writing, if the borrower opts to prepay;

5) The instruction that if applicable law is finally interpreted so that the interest charged under the note or other loan charges exceed legal limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected by the lender that exceeded permitted limits shall be refunded to the borrower;

6) the instruction that the lender send written notice of default;

7) the instruction entitling the lender to be paid back by the borrower for all costs and attorney's fees;

8) the instruction that the lender send any notice that must be given to the borrower pursuant to the terms of the note by either delivering it or mailing it by first class mail; and

9) the instruction that the borrower send any notice [that] must be given to the lender pursuant to the terms of the note by either delivering it or mailing it by first class mail.

With respect to late fees, the definition of a negotiable instrument states that the promise to pay may include "interest or other charges described in the promise." TEX. BUS. & COM. CODE ANN. § 3.104(a). Late fees are clearly "other charges" that fall within the scope of the definition of a negotiable instrument. *See* William H. Burgess III, *Negotiability of Promissory Notes in Foreclosure Cases: Ballast is not Luggage*, 88-MAR Fla. B.J. 8, 15 (2014). Similarly, section 3.106(b)(i) explicitly allows a negotiable instrument to reference a separate writing, such as a deed of trust, for information concerning collateral, prepayment, or acceleration. *See* TEX. BUS. & COM. CODE ANN. § 3.106(b)(i). The reference to the deed of trust listed by the Howards as the second "additional undertaking" in the note falls squarely within the language permitted by section 3.106(b)(i) and has no effect on the note's negotiability. *See id*. § 3.106(b)(i) cmt. 1.

The third, fourth, sixth, eighth, and ninth alleged additional undertakings all concern the giving of notices. The notices involve either interest, prepayment, default, or other matters controlled by the note. In each case, the required notice is either incidental to the note's unconditional promise to pay or a permissible undertaking to maintain or protect the collateral.

–15–

*See id*. § 3.104(a)(3)(A).  The Howards cite no authority, and we have found none, that notice provisions of this sort would render the note non-negotiable.

The Howards do not explain how the fifth item on their list, otherwise known as a usury savings clause, constitutes an additional undertaking or otherwise affects negotiability.  The clause merely adjusts the amount of interest charged on the note to the readily-ascertainable permitted legal limit.  The Texas Supreme Court has held that a variable interest rate does not render a promissory note non-negotiable so long as the rate is readily ascertainable by any interested person. *See Amberjoy v. Societe de Banque Privee*, 831 S.W.2d 793, 797-98 (Tex. 1992).

Finally, the provision of the note requiring the Howards to reimburse the note holder for all costs and expenses incurred in enforcing the note, like the late fees discussed above, falls under the category of "other charges described in the promise" which are specifically permitted.  TEX. BUS. & COM. CODE ANN. § 3.104(a).  The charges relate only to collecting on the indebtedness evidenced by the note and do not alter or expand the borrowers' obligation to pay the amount fixed by the note.  As such, the provision does not impact the note's negotiability. *See* Burgess, *supra,* at 17.

Because the note at issue is a negotiable instrument, it is subject to a six-year limitations period rather than a four-year period. *See* TEX. BUS. & COM. CODE ANN. § 3.118(a); *Aguero*, 70 S.W.3d at 374.  The stipulated facts and pleadings in the record show the Howards are in default on the note and PNC brought its claim to recover within six years of the date its claim accrued.  Accordingly, we conclude the trial court erred in rendering judgment that the note was void and unenforceable and in failing to render judgment in favor of PNC on its claim to recover on the note.  We resolve the banks' fourth issue in their favor.

**IV. Findings of Fact and Conclusions of Law**

Although requested by the banks, the trial court in this case did not file findings and conclusions of law. The banks request in their first issue that we instruct the trial court to file findings and conclusions so that they "may better show this Court where reversible error exists within the trial record." Given the procedural history and record in this case, we conclude findings and conclusions are neither necessary nor proper.

The validity of the 2010 foreclosure on the Howards' property was resolved by summary judgment. Findings of fact and conclusions of law are improper in a summary judgment proceeding. *See Stangel v. Perkins*, 87 S.W.3d 706, 709 (Tex. App.—Dallas 2002, no pet.).

The remainder of the case was resolved in a bench trial that was conducted almost entirely on stipulated facts. At the beginning of the trial, counsel for the banks stated that the questions being presented to the court "are basically questions of law, not so much fact." Although the Howards testified at trial, the banks do not explain how their testimony had any bearing on the claims presented. Nor do they explain how the Howards testimony presented any conflicting evidence that would require the trial court to decide a question of fact. The banks have contended on appeal that PNC's lien rights, as well as its right to recover under the note, could both be determined entirely by the stipulated facts. Generally, findings of fact and conclusions of law have no place in a trial based on stipulated facts. *See Int'l Union, United Auto., Aerospace and Agric. Implement Workers of A.-UAW, v. Gen. Motors Corp.*, 104 S.W.3d 126, 129 (Tex. App.—Fort Worth 2003, no pet.). The banks have failed to show how this case is an exception to that rule. We resolve their first issue against them.

## Conclusion

Based on the foregoing, we affirm the trial court's partial summary judgment in favor of the Howards on their claim against Bank of Indiana. We further affirm the trial court's judgment declaring that any lien or power of sale held by the banks on the Howards' property is void and unenforceable. We reverse that portion of the trial court's judgment declaring the note held by PNC to be void and unenforceable and render judgment in favor of PNC on their note claim. We remand this cause to the trial court to determine the proper amount recoverable by PNC on its claim to enforce the note.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

171484F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PNC MORTGAGE, A DIVISION OF PNC BANK, N.A. SUCCESOR TO NATIONAL CITY BANK AND NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK OF INDIANA, Appellants

No. 05-17-01484-CV      V.

JOHN HOWARD AND AMY HOWARD, Appellees

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-01559-2010.
Opinion delivered by Justice Reichek.
Justices Whitehill and Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment declaring the note held by PNC MORTGAGE, A DIVISION OF PNC BANK, N.A., SUCCESSOR TO NATIONAL CITY BANK, to be void and unenforceable. We RENDER judgment in favor of PNC MORTGAGE, A DIVISION OF PNC BANK, N.A., SUCCESSOR TO NATIONAL CITY BANK on its claim against JOHN HOWARD and AMY HOWARD to recover on the note. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for determination of the proper amounts recoverable by PNC MORTGAGE, A DIVISION OF PNC BANK, N.A., SUCCESSOR TO NATIONAL CITY BANK.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered June 24, 2019